UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER SHAREEF ARABO,

    Plaintiff,

vs.                                                  Case No. 12-11003

GREEKTOWN CASINO, LLC, LEE HOWES,      HON. AVERN COHN
JOHN DOE #1, JOHN DOE #2, JOHN DOE #3,
JOHN DOE #4, WAYNE GALLAGHER, JOHN
H. AUTREY, JOHN DOE #5, JANE DOE #1,
JOHN DOE #6, JOHN DOE #7, CITY OF
DETROIT, TERRY BONDS, WILLIAM
BREWSTER, REBECCA GAJESKI, MGM GRAND
DETROIT, LLC, JANE SMITH #1, JAMES
ROGERS, MICHIGAN GAMING CONTROL
BOARD, JOHN JONES #1, AMY BRANNAN,
STEPHEN FORD, JOHN DOES #8 TO 100,
RICHARD ROSES #1 TO 100, JOHN SMITHS
#2 TO 100, JOHN JONES #2 TO 100,

    Defendants.

_____/

**MEMORANDUM AND ORDER GRANTING DEFENDANT MGM GRAND'S MOTION
TO DISMISS (Doc. 17) AND GRANTING DEFENDANTS MICHIGAN GAMING
CONTROL BOARD'S AND AMY BRANNAN'S MOTION TO DISMISS (Doc. 18)**

**I. Introduction**

This is a national origin discrimination, and violation of due process and equal protection case under 42 U.S.C. §§ 1983, 1985, 1986, and 2000a.  Plaintiff Peter Arabo played blackjack at Greektown and MGM Grand casinos.  Based on separate incidents at each casino, Arabo is banned from each casino.  Arabo alleges differential treatment based on his status as an "advantaged player"/"card-counter" and Iraqi.

Arabo initially sued the following defendants: (1) the Michigan Gaming Control Board ("MGCB"), a governmental entity created by the Michigan Gaming Control and Revenue Act of 1996 ("MGCRA"); (2) Amy Brannan, an MGCB gaming regulation officer; (3) John Jones #1, an MGCB gaming regulation officer; (4) John Jones #2-100, MGCB employees; (5) Greektown Casino, L.L.C., a casino located in Detroit, Michigan; (6) MGM Grand Casino, L.L.C, a casino located in Detroit, Michigan; (7) Lee Howes, a Greektown dealer supervisor; (8) Wayne Gallagher, a Greektown security officer; (9) John Autrey, Greektown's security director; (10) John Doe #1, a uniformed Greektown security guard; (11) John Doe #2, a Greektown employee supervisor; (12) John Doe #3, a uniformed Greektown security guard; (13) John Doe #4, a Greektown employee supervisor; (14) John Doe #5, a uniformed Greektown security guard; (15) John Doe #6, a Greektown security guard; (16) John Doe #7, a Greektown security guard; (17) John Does #8-100, Greektown employees; (18) Jane Doe #1, a Greektown employee supervisor; (19) Jane Smith #1, an MGM Grand pit manager; (20) John Smiths #2-100, MGM Grand employees; (21) James Rogers, an MGM Grand executive; (22) the City of Detroit; (23) Terry Bonds, a Detroit Police Officer; (24) William Brewster, a Detroit Police Officer; (25) Rebecca Gajeski, a Detroit Police Officer; (26) Richard Roes #1-100, City of Detroit employees; and (27) Stephen Ford, a Michigan State Police trooper.[1]

The Complaint asserts the following eleven claims, phrased by Arabo as follows:

Count I Denial of Due Process as to defendant MGCB

---

[1] The Court entered an order granting the City of Detroit's motion to dismiss (Doc. 29). City officers Bonds, Brewster, and Gajeski, and Michigan State Police trooper Ford, were not served with the complaint. Also, Arabo has not alleged any action taken by City employees Richard Roes #1-100. The claims against these defendants are DISMISSED.

Count II Denial of Due Process as to defendants Greektown, MGM Grand, John Jones #1, Amy Brannan, John Does #8-100, Jane Smith #1, Jane Smith #2, and Lee Howes

Count III Denial of Equal Protection as to defendant MGCB

Count IV Denial of Equal Protection as to defendants Greektown, Howes, John Does #8-100, MGM Grand, Jane Smith #1, Rogers, John Smiths #2-100, John Jones #1, and Brannan

Count V Fourth Amendment – Unlawful Seizure and Excessive Force as to defendants Greektown, Howes, John Does #1-7, Gallagher, Autrey, and Jane Doe #1

Count VI Fourth Amendment – False Arrest and Imprisonment as to defendants Greektown, Howes, and Ford

Count VII First Amendment – Retaliation and Selective Enforcement as to defendants Greektown, Howes, and Ford

Count VIII Violations of 42 U.S.C. § 2000a-1 as to defendants Greektown and MGM Grand

Count IX Violations of Michigan's Elliot-Larsen Civil Rights Act as to defendants Greektown and MGM Grand

Count X Common Law Assault and Battery as to defendants Greektown, Howes, John Does #1-7, Gallagher, Autrey, and Jane Doe #1

Count XI Common Law False Arrest, Imprisonment, Abuse of Process, and Malicious Prosecution as to defendants Greektown, Howes, John Does #1-7, Gallagher, Autrey, and Jane Doe #1

Before the Court are separate motions to dismiss by MGM Grand and its employees (Doc. #17) and MGCB and Amy Brannan (Doc. #18). For the following reasons, both motions will be granted.

Throughout this opinion, when the Court refers to MGM Grand, it is also referring to the MGM Grand employees: Jane Smith #1, John Smiths #2-100, and James Rogers.

## II. Background

Because a motion to dismiss tests the legal sufficiency of the complaint, the Court

takes as true and recites the facts alleged in Arabo's complaint.

### A. Greektown Incident

On March 6, 2010, Arabo played blackjack at Greektown. He was at a table with two other players. During the game, the dealer erroneously dealt one of the other players a card. Because of this, Howes ordered a security review of the table. Howes determined that the card was properly dealt and ordered the game to continue. Arabo objected and asked for permission to withdraw his pending bets. However, Howes insisted the game continue. The dealer drew a card and, as a result, Arabo lost his bets totaling $425.00.

Although Arabo lost his bets, he removed his betting chips from the table. He believed he could withdraw his pending bets. Arabo informed Gallagher and Autrey that the betting chips belonged to him and he would not let the casino have them. Arabo was escorted off the premises and told that he was banned from the casino.

Arabo's attorney notified Greektown that Arabo was filing a claim for injuries. After notifying Greektown that he would pursue a claim, Arabo was charged with larceny based on the same incident. He was acquitted of the larceny.

Arabo claims his rights were violated when Greektown employees used excessive force against him, and his betting chips were unfairly confiscated.

### B. MGM Grand Incident

On June 8, 2011, Arabo played blackjack at MGM Grand. He was sitting at a table with two other players. He placed three bets on the table, each for twenty-five dollars, totaling seventy-five dollars. The table minimum was fifty dollars. Before the game could proceed, Jane Smith #1 stopped the dealer and informed Arabo that he was not allowed to place a bet for more than the table minimum. Arabo protested, and Rogers removed

Arabo's bets from the table. Security escorted Arabo from the premises and told him never to return. Arabo claims he was discriminated against because he is (1) an advantaged blackjack player because he is able to count cards, and (2) Iraqi.

### C. The MGCB

Arabo filed a claim about the MGM Grand incident with the MGCB. The MGCB informed Arabo that it did not have the authority to award him money damages for MGM Grand's refusal to allow him to play blackjack. In addition, the MGCB told Arabo that MGM Grand had the authority to eject and ban him from the premises.

After Arabo was acquitted of the larceny in the Greektown incident, he contacted MGCB to determine whether he would be permitted to return to Greektown. On July 1, 2011, Brannan informed Arabo that Greektown banned him for (1) stealing chips, and (2) being an advantaged player.

Arabo says Greektown's and MGM Grand's actions are, in effect, attributable to MGCB.

### III. Standard of Review

### A. Fed. R. Civ. P. 12(b)(1) Standard

A Fed. R. Civ. P. 12(b)(1) motion seeks dismissal for a court's lack of subject matter jurisdiction. The motion may be based on either a facial attack or a factual attack on the allegations of the complaint. Tri-Corp Mgmt. Co. v. Praznik, 33 F. App'x 742, 745 (6th Cir. 2002). If subject matter jurisdiction is facially attacked, the court must take all material allegations in the complaint as true and construe them in a light most favorable to the nonmoving party. United States v. A.D. Roe. Co., 186 F.3d 717, 721–22 (6th Cir. 1999). If, however, there is a challenge to the factual existence of subject matter jurisdiction, the

court is "empowered to weigh the evidence and no presumptions apply as to the truthfulness of the relator's allegations." Id.

## B. Fed. R. Civ. P. 12(b)(6) Standard

A Fed. R. Civ. P. 12(b)(6) motion seeks dismissal for a plaintiff's failure to state a claim upon which relief can be granted. In reviewing a motion to dismiss, "the court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001). The court is not required to accept as true legal conclusions, conclusory statements, or mere recitations of the elements of a cause of action. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citation omitted).

"To survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n., 176 F.3d 315, 319 (6th Cir. 1999) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)). The plaintiff must "state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief." Fabian v. Fuller Helmets, Inc., 628 F.3d 278, 280 (6th Cir. 2010) (citing Iqbal, 556 U.S. at 677). The Court must "draw on its judicial experience and common sense" in determining whether a claim is plausible. Iqbal, 556 U.S. at 679.

## IV. Discussion

### A. MGM Grand's Motion to Dismiss

MGM Grand asks the Court to dismiss two claims: (1) violation of due process and equal protection under 42 U.S.C. § 1983 and (2) national origin discrimination in violation of 42 U.S.C. § 2000a-1 and the Elliot-Larsen civil rights act, M.C.L. § 37.2101, et seq. The Court analyzes the claims separately.

### 1. § 1983 Claims

MGM Grand states the § 1983 claims must be dismissed for three reasons. First, the Michigan Gaming Control and Revenue Act ("MGCRA"), M.C.L. § 432.201, et seq., provides the MGCB with exclusive jurisdiction over gaming claims, depriving the Court of subject matter jurisdiction. Second, MGM Grand's employees are not state actors that can be sued under § 1983. Third, Arabo has not alleged a constitutional deprivation because his ability to play blackjack is not a protected right.

In response, Arabo argues the Supremacy Clause gives the Court jurisdiction to hear his claims. In addition, Arabo contends that the pervasive regulations of the MGCRA transform MGM Grand's actions into state action.

### a. Subject Matter Jurisdiction

MGM Grand's argument that the Court lacks subject matter jurisdiction because of the exclusive jurisdiction provision in the MGCRA does not persuade. Although the MGCRA provides the MGCB with exclusive jurisdiction over certain aspects of gaming in Michigan, it does not foreclose a plaintiff's ability to seek redress for alleged constitutional violations. MGM Grand cites McEntee v. Incredible Techs., Inc., No. 263818, 2006 WL 659347 (Mar. 16, 2006) and Kraft v. Detroit Entm't, L.L.C., 261 Mich. App. 534 (2004), for

the proposition that the MGCRA forecloses Arabo's § 1983 claim. However, those cases do not stand for the proposition that a federal court lacks jurisdiction over constitutional deprivations arising out of gaming claims in Michigan. Rather, in those cases, the court of appeals held that the MGCRA preempted Michigan common-law claims.

The Constitution confers on the federal courts the power to "order state officials to comply with federal law." New York v. United States, 505 U.S. 144 (1992). Section 1983 is not a "catch-all" statute that allows for federal court jurisdiction in matters traditionally resolved by state courts, Sullivan v. Brown, 544 F.2d 279, 284 (6th Cir. 1976); however, § 1983 provides the federal courts with jurisdiction where a plaintiff can show the deprivation of a constitutional right. Id. A state legislature cannot unilaterally foreclose a plaintiff's ability to seek redress for constitutional claims. Thus, the MGCRA does not take away this Court's subject matter jurisdiction.

### b. State Action

#### i. The Law

Section 1983 on its own creates no substantive rights; rather, it is a vehicle by which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws. Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). To state a claim under § 1983, a plaintiff must establish: "(1) the deprivation of a right secured by the Constitution or the laws of the United States (2) caused by a person acting under the color of state law." Miller v. Sanilac Cnty., 606 F.3d 240, 247 (6th Cir. 2010) (internal quotations and citations omitted).

Since the Fourteenth Amendment is directed at the States, a plaintiff must allege a violation of a right that is fairly attributable to action of the state. Lugar v. Edmondson Oil

Co., Inc., 457 U.S. 922, 924 (1982). Where the defendant is a private party, state action lies only where a plaintiff can show the defendant's actions are "fairly attributable to the state." Id. at 947. The requirement of state action prevents holding a state liable for conduct that it cannot control. Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (citations omitted). Thus, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.' " Id. (citing Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)).

The Supreme Court has provided three tests for determining whether private action can be transformed to state action: "(1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." See Romanski v. Detroit Entm't, L.L.C., 428 F.3d 629, 636 (6th Cir. 2005). The public function test applies to a private party exercising "powers traditionally reserved exclusively to the state," such as "holding elections, exercising eminent domain, and operating a company-owned town." Chapman v. Higbee Co., 319 F.3d 825, 833-34 (6th Cir. 2003) (internal citations omitted). The state compulsion test characterizes the actions of a private actor as that of the state when the state exercises "coercive power" or provides "significant encouragement" that is "more than mere approval." Wolotsky v. Huhn, 960 F.2d 1331, 1335 (6th Cir. 1992). "Under the symbiotic relationship or nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." Id.

In Brentwood, the Supreme Court stated that the criteria for determining state

action "lack rigid simplicity" and no one set of circumstances is "absolutely sufficient." 531 U.S. at 295-96. By way of example, the Supreme Court listed a number of non-exclusive factors courts should consider in determining whether private action can be considered state action:

> [A] challenged activity may be state action when it results from the State's exercise of "coercive power," when the State provides "significant encouragement, either overt or covert," or when a private actor operates as a "willful participant in joint activity with the State or its agents." We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," when it has been delegated a public function by the State, when it is "entwined with governmental policies," or when government is "entwined in [its] management or control."

Id. at 296 (internal citations omitted).

### ii. Application to MGM Grand

Here, Arabo essentially argues that the MGM Grand defendants are state actors based on the "pervasive" state regulation of Michigan's casinos through the MGCRA. Arabo seeks to turn MGM Grand's private action into state action under the symbiotic relationship or nexus test. Both the Sixth Circuit Court of Appeals and another judge in this district have considered and rejected Arabo's argument. See Lindsey v. Detroit Entm't, L.L.C., 484 F.3d 824 (6th Cir. 2007); Smith v. Detroit Entm't, L.L.C., 338 F.Supp.2d 775 (E.D. Mich. 2004).

In Lindsey, the court of appeals stated, "[W]e do not consider the fact that the state pervasively regulates casinos in itself to be sufficient to transform the actions of [the casino's] employees, including [the casino's] security personnel, into actions of the state." Id. at 831 n.9. Similar to Lindsey, in Smith, a judge of this district held that a casino's

10

private security guards are not state actors simply because Michigan's casinos are thoroughly regulated by the state. 338 F.Supp.2d at 783. Likewise, the Court finds "compliance with the requirements of the Michigan Gaming Commission Regulations [i]s not a usurpation of state government authority but rather, a submission to it." Id. Thus, Arabo cannot turn the MGM Grand defendants into state actors under the symbiotic relationship test.[2] Arabo's § 1983 claims, counts II and IV, consequently, must be dismissed.

---

[2] The Court recognizes that courts have applied the "public function" test to establish state action when a private security guard is involved. In Romanski v. Detroit Entm't, LLC, the Sixth Circuit Court of Appeals distinguished two situations. 428 F.3d 629. The first situation is that which "private security guards are endowed by law with plenary police powers such that they are *de facto* police officers [who] may qualify as state actors under the public function test." Id. at 637 (citing Payton v. Rush-Presbyterian, 184 F.3d 623, 630 (7th Cir. 1999); Henderson v. Fisher, 631 F.2d 1115 (3d Cir. 1980) (per curiam); Rojas v. Alexander's Dept. Store, Inc., 654 Supp. 856 (E.D. N.Y. 1986)). Under this theory, a plaintiff can bring a § 1983 claim because the state has delegated, to a private party, power that is traditionally reserved to the state. The second situation is where private security guards have "some police-like powers but not plenary police authority." Id. (citing Wade v. Byles, 83 F.3d 902, 906-07; Johnson v. LaRabida Children's Hosp., 372 F.3d 894, 896-97 (7th Cir. 2004)). Under this second situation, private security guard actions do not rise to the level of state action. The central inquiry in Michigan is whether the security personnel are licensed under M.C.L. § 338.1079, having power to make misdemeanor arrests; if they are, the public function test characterizes their acts as state action; if they are not, their action cannot be "fairly attributable to the state." Lindsey, 484 F.3d at 829-30 (citations omitted).

Arabo does not allege that the decision to deprive him the ability to play blackjack involved a MGM Grand security guard. Indeed, in his response brief, Arabo acknowledges that "none of his claims involve an allegation of unlawful detainment by any state licensed security guard or for that matter any employee of the MGM." Arabo does not claim that any MGM Grand security guard deprived him of due process or equal protection of the laws. Rather, he alleges that his rights were violated when "[MGM Grand] stopped the game and refused his bet, subsequently permanently banished him from their casino and on other occasions when they ordered shuffles at will." As such, Arabo has not asserted a constitutional deprivation involving state action under the public function test.

### 2. Discrimination Claims

MGM Grand asks the Court to dismiss the national origin discrimination claim, arguing that Arabo fails to satisfy the pleading requirements as described in Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Here, Arabo alleges he was discriminated against based, in part, on his national origin. Arabo, however, fails to provide any support for his claim in his complaint. Rather, the complaint merely recites that Arabo is of Iraqi decent, and that non-Iraqi's were not treated in the same manner as Arabo. To survive a motion to dismiss under Iqbal, the complaint must "permit the court to infer more than the mere possibility of misconduct." 556 U.S. at 679 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged– but it has not 'show[n]'–'that the pleader is entitled to relief.' " Id. (citing Fed. Rule Civ. P. 8(a)). Arabo's conclusory allegations do not survive the Iqbal standard and he has not shown that he is entitled to relief.

Accordingly, MGM Grand's motion will be granted.

### B. MGCB and Amy Brannan's Motion to Dismiss

### 1.

Arabo alleges that his due process rights were violated by the MGCB allowing Greektown to unilaterally confiscate betting chips without providing him a post-deprivation hearing. In addition, Arabo claims MGCB violated his equal protection rights by allowing MGM Grand to refuse his business. Arabo's claims must be dismissed because he seeks to attribute Greektown's and MGM Grand's actions to the MGCB based solely on the casino regulations in the MGCRA. Arabo does not allege any state action that would allow

him to pursue his claims. Rather, Arabo alleges private parties, Greektown and MGM Grand, violated his rights.

As stated earlier, in order to bring a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right that is fairly attributable to action of the state. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924 (1982). Here, Arabo argues that Greektown's and MGM Grand's actions are attributable to the MGCB because the MGCRA pervasively regulates Michigan's casinos. For the same reasons that the Court finds Arabo cannot transform MGM Grand's private action into state action under the symbiotic relationship test, see discussion infra, IV.A.1.b., he cannot attribute Greektown's and MGM's actions to the MGCB.

Arabo also says MGCB should be held liable because MGCB does not have regulations in place that provide for review of a casino's decision to exclude patrons; and, further, MGCB does not award monetary damages to casino patrons. Arabo, in essence, wants to hold MGCB liable for failure to enact regulations. At oral argument, Arabo's counsel could not cite a single case establishing how such an allegation amounts to a constitutional violation. Even if MGCB failed to enact regulations, and Arabo suffered an injury based on the failure, the appropriate venue to hear the claim is not the federal court.

2.

Further, Arabo has not alleged that Brannan did anything to violate his rights. Brannan, an MGCB employee, simply responded to Arabo's inquiry when he asked if he could return to Greektown subsequent to the acquittal of his larceny charge. Brannan was not present at Greektown when the alleged incident occurred. She did not know Arabo. Arabo cannot establish that, in performing her job duties, Brannan violated Arabo's

13

constitutional rights.

Accordingly, MGCB and Amy Brannan's motion to dismiss will be granted.[3]

## V.  CONCLUSION

For the reasons above, MGM Grand's motion to dismiss is GRANTED and counts II, IV, VIII, and IX are DISMISSED.  Further, MGCB and Amy Brannan's motion to dismiss is GRANTED and counts I, III and IV are DISMISSED.  The case will continue against Greektown and its employees.

SO ORDERED.


 S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  September 21, 2012


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 21, 2012, by electronic and/or ordinary mail.

 S/Julie Owens
Case Manager, (313) 234-5160

---

[3] The complaint also names John Jones #1, an MGCB gaming regulation officer and John Jones #2-100, MGCB employees.  However, Arabo fails to state any action taken by these defendants and the claims are DISMISSED.

14